```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CENTER FOR BIOLOGICAL DIVERSITY et al.,                          :
                                                                 :
                                    Plaintiffs,                  :
                                                                 :            21-cv-5706 (LJL)
                    -v-                                          :
                                                                 :            OPINION AND ORDER
U.S. FISH AND WILDLIFE SERVICE et al.,                           :
                                                                 :
                                    Defendants.                  :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/18/2022__

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Center for Biological Diversity, Waterkeeper Alliance, Inc., Waterkeepers Chesapeake, Inc., Lower Susquehanna Riverkeeper Association, and Middle Susquehanna Riverkeeper Association (collectively "Plaintiffs") move to compel completion of the administrative record and for production of a privilege log from defendants U.S. Fish and Wildlife Service and two of its officials (collectively "Defendants" or "FWS"). *See* Dkt. No. 33. For the following reasons, the motion is denied without prejudice to renewal by a formal motion made within one month of the date of this Opinion and Order.

## BACKGROUND

Plaintiffs are non-profit and not-for-profit organizations and corporations involved in environmental advocacy efforts in New York, Pennsylvania, and Maryland. Dkt. No. 1 ("Compl.") ¶¶ 13–17. Defendants are a federal agency within the U.S. Department of the Interior, the acting Director of the agency, and the Secretary of the Interior. *Id.* ¶¶ 22–24. Plaintiffs challenge the FWS's April 4, 2019 decision and "12-month finding" that the eastern hellbender does not warrant listing as a threatened or endangered species under the Endangered

Species Act ("ESA").[1] *Id*. ¶¶ 81, 85–86.  Plaintiffs allege that FWS's decision is contrary to the ESA and is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. *Id.* ¶¶ 4, 79–86.

The Endangered Species Act and its implementing regulations empower FWS to "determine whether any species is an endangered species or a threatened species" based on an enumerated set of factors.  16 U.S.C. § 1533(a)(1).  Any determination of endangered or threatened status shall be made "solely on the basis of the best scientific and commercial data available to [the agency] after conducting a review of the status of the species and after taking into account those efforts, if any, being made . . . to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices." *Id.* § 1533(b)(1)(A).

In April 2010, Plaintiffs petitioned FWS, pursuant to the ESA's provisions,[2] to list the eastern hellbender as threatened or endangered.  Compl. ¶ 3.  Plaintiffs allege that an estimated eighty percent of historic hellbender populations have been extirpated or are in decline. *Id.* ¶ 4. Following litigation to compel the FWS to issue its required finding and a settlement, FWS issued a finding on April 4, 2019 that listing the eastern hellbender was not warranted. *Id.* ¶ 5. Plaintiffs' instant complaint, filed on July 1, 2021, alleges that FWS's finding "failed to rely on

---

[1] The eastern hellbender is an aquatic salamander found in areas ranging from northeastern Mississippi to southern New York.  *See Id.* ¶ 2.

[2] Under the ESA, interested persons may petition FWS to "add a species to, or to remove a species from, either of [the endangered species or threatened species] lists," and FWS "shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted," and, if so, the agency "shall promptly publish each finding made."  16 U.S.C. § 1533(b)(3)(A), (c).  Where a "petition action is not warranted," FWS "shall promptly publish such finding in the Federal Register," and any such negative finding "shall be subject to judicial review." *Id.* § 1533(b)(4)(B)(i), (C)(ii).

the best scientific and commercial data available in several respects," rendering its decision "arbitrary and unlawful." *Id.*

The instant dispute relates to documents turned over pursuant to a Freedom of Information Act ("FOIA") request. On April 10, 2019, Plaintiffs filed a FOIA request seeking records relating to FWS's decision not to list the eastern hellbender as endangered or threatened. *See* Dkt. Nos. 35-2 to 35-3. Plaintiffs sought the following records through their FOIA request:

> From January 20, 2017 to date FWS conducts this search, in order of prioritization:
>
> 1. The records that FWS relied upon to support its decision not to protect the entire eastern hellbender subspecies as endangered or threatened ("12-month finding") under the Endangered Species Act, 16 U.S.C. §§ 1531-1554 ("ESA"). 84 Fed. Reg. 13223 (Apr. 4, 2019); and
>
> 2. The records mentioning or including FWS's 12-month finding on a petition to list the eastern hellbender under the ESA, including but not limited to the records mentioning and including the species status assessment for the eastern hellbender.

Dkt. No. 35-2 (footnote omitted).

Plaintiffs received 1,025 records as a result of their FOIA request. Dkt. No. 34 at 3. Plaintiffs identified 718 records from the FOIA request that they contended were improperly omitted from the administrative record, and on March 2, 2022, Plaintiffs sent FWS a letter requesting that those 718 records be added to the administrative record and that FWS complete a privilege log if it asserted that any of the documents were privileged. *Id.*; *see also* Dkt. No. 35-4. Defendants agreed to stipulate to the inclusion of over 500 documents in the administrative record notwithstanding their contention that the documents were not properly part of the record. Dkt. No. 35-5 to 35-7. There are therefore 198 documents that Plaintiffs requested be added to the administrative record that have not been added.[3]

---

[3] On April 26, 2022, Plaintiffs stated that they would stipulate to the administrative record if Defendants agreed to add sixty documents (thirty-two of which Defendants classified as

## DISCUSSION

Plaintiffs filed this motion to compel completion of the administrative record and production of a privilege log on June 3, 2022. *See* Dkt. Nos. 33–34. Plaintiffs contend that FWS "cultivated the administrative record to erase the heart of its decision-making process." Dkt. No. 34 at 10. Defendants characterize the remaining 198 disputed documents as predecisional and deliberative documents that are not part of the administrative record. *See* Dkt. No. 36 at 7 (citing *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)). They assert that the designated administrative record properly includes "underlying source material for the SSA . . . SSA peer review comments . . . expert elicitation comments . . . and comments to the SSA drafts." *Id.* at 9–10.[4]

As a result of the FOIA request, both parties have the disputed documents in their possession, and the documents are available to the public. The key inquiry is thus whether those documents are properly part of the "whole record" considered by the Court in a challenge under the Administrative Procedure Act ("APA") and whether those documents should be added to the administrative record.

Under the APA, a reviewing court must determine whether "final agency action," 5 U.S.C. § 704, is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A). The APA requires, in words that do not admit of discretion, that "the court shall review the whole record or those parts of it cited by a party." *Id.* § 706. The whole

---

predecisional and deliberative, and twenty-eight of which Defendants were unable to locate). Dkt. No. 35-6. Defendants agreed to stipulate to twenty-four additional documents but not all sixty. Dkt. No. 35-7. Plaintiffs brought this motion to compel all 198 remaining disputed documents.

[4] The Species Status Assessment ("SSA") is an assessment conducted before a 12-month finding that provides "a single source for species' biological information needed for all ESA decisions." Dkt. No. 35-11. The SSA does not result in a decision directly. *Id.*

4

record consists of "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). The "'whole record' refers to the full record that was before the agency, meaning the agency decision-maker, at the time of the decision." *Comprehensive Comm'y Devel. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012). The agency is responsible for designating the administrative record and certifying that it is complete. *Oceana*, 920 F.3d at 865. Such certification serves as a "formal representation" by the agency that it has properly completed the record, *id.*, and—like all agency action—is entitled to the presumption of regularity. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity."); *Comprehensive Comm'y Devel. Corp.*, 890 F. Supp. 2d at 309 ("[D]eference is due to the agency's judgment as to what constitutes the whole administrative record."). Ultimately, however, the determination of what constitutes the "whole record" is for the court. The agency may not both curate the record free from judicial review and then, based on that curated record, argue that administrative action is supported by the record. *See, e.g.*, *State v. U.S. Immigr. & Customs Enf't*, 438 F. Supp. 3d 216, 217 (S.D.N.Y. 2020) (noting that while judicial review is generally limited to review of the administrative record, a defendant agency "cannot have sole, unreviewable authority to decide which documents properly comprise the administrative record and which do not"); *Thompson*, 885 F.2d at 555 (explaining that the whole administrative record is "not necessarily" the documents that the agency designates as the record). Plaintiffs can overcome the presumption by identifying "reasonable, non-speculative grounds for [the] belief that the documents were

5

considered by the agency and not included in the record." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006).

In an APA review, the district court examines "the agency's articulated justification for its decision that is at issue." *Comprehensive Comm'y Devel. Corp.*, 890 F. Supp. 2d at 312. "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). Thus, certain "predecisional deliberative materials" are not properly included in the whole record—at least when the agency has made formal findings, not every email, draft notice, discussion note, or meeting reminder that agency personnel circulate in the course of making the decision how to apply the statutory directive to the facts that they have found constitutes the whole record. For example, documents that relate solely to "'the mental processes of administrative decisionmakers'" are characterized as "extra-record" and may be obtained only "[o]n a 'strong showing of bad faith or improper behavior.'" *Id.* at 2573–74 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

By the same token, however, the terms "predecisional" and "deliberative" are an imprecise guide to analysis. Every document in the administrative record is ordinarily "predecisional" in the sense it was generated prior to the decision; courts disregard "post-hoc" justifications. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) (explaining that agency decision-maker's "explanation 'must be viewed critically' to ensure that the [action] is not upheld on the basis of impermissible '*post hoc* rationalization'" (quoting *Overton Park*, 401 U.S. at 420)). The term "deliberative," drawn from FOIA's Exemption 5, is to some extent question-begging. The Supreme Court has stated that, under

6

FOIA Exemption 5, documents "are 'deliberative' if they were prepared to help the agency formulate its position," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021), and the Second Circuit has explained that, in considering whether a document is deliberative for the purposes of FOIA's Exemption 5, courts consider whether the document "reflects the give-and-take of the consultative process" or "bear[s] on the formulation or exercise of policy-oriented judgment," *Nat. Res. Def. Council v. EPA*, 19 F.4th 177, 184 (2d Cir. 2021) (first quoting *Nat. Res. Def. Council v. EPA*, 954 F.3d 150, 156 (2d Cir. 2020); and then quoting *Grant Cent. P'ship v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)).  Those formulations arguably sweep more broadly than the "deliberative memoranda reflecting an agency's mental process," the review of which "is usually frowned upon" in APA cases regarding formal rulemakings.  *In re Nielsen*, 2017 U.S. App. LEXIS 26821 (2d Cir. Dec. 27, 2017) (quoting *Suffolk v. Sec'y of the Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977)).  All kinds of documents might be prepared for the purpose of helping the agency formulate its position or bear on the formulation or exercise of policy-oriented judgment without revealing or being solely relevant to the agency's mental process.  Even under the plain language of the exemption which refers by its terms to documents that would not be available "to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), the work in defining what constitutes the "whole record" and thus would be available "to a party other than an agency" is done by the language of the APA read in its entirety and the meaning that "whole record" must take on given the purposes of that statute and the imperative that judicial review be effective.

    By the same token, a document that is not deliberative is not by that fact alone necessarily part of the whole record.  And it is conceivable that a document that might, as a whole, be characterized as deliberative could still constitute or generate the facts or evidence

7

before or available to the agency and be properly considered part of the administrative record. Nor is it sufficient to apply an arbitrary time cutoff. As Defendants admitted, a document that postdates the SSA would still constitute part of the whole record if it generated scientific or commercial data that was then, by virtue of its generation, available to agency decisionmakers.[5] *See* 16 U.S.C. § 1533(a)(1). As Defendants put it at oral argument, there exists a spectrum. Where exactly to draw the line between what is properly part of the "whole record" and what is not is best determined in the concrete by examining the documents and other evidence themselves.

This case is relatively unique in that Plaintiffs already have the documents they seek to have included in the "whole record." They are not seeking discovery of documents from the agency and, as they admitted at argument, a privilege log would not provide them any information which they do not already possess. They know the documents and the basis of the agency's claim for excluding them—the agency takes the position that they do not contain facts or evidence that was considered in rendering the decision. The agency does not assert a privilege. Dkt. No. 36 at 12. It takes the position that, even if the documents are not privileged, they are not part of the record because they are not "evidence, and instead reflect the agency's non-final evaluation and discussion of the evidence." *Id.* at 8. However, Plaintiffs have not put any actual documents in front of the Court to justify the claim that the presumption has been rebutted. The parties have the documents at issue as does the public, but the Court does not.

Plaintiffs instead offer two arguments for why they have rebutted the presumption that the administrative record as put forth by the FWS is complete. Neither is sufficient. First,

---

[5] For example, at oral argument held in this matter on July 15, 2022, counsel for Defendants conceded that if an internal agency scientist generated data, this would be part of the "whole record," even if it was generated or communicated to a decision-maker after the SSA.

Plaintiffs point to FWS's sworn declaration accompanying the administrative record, stating that the record did not include predecisional, deliberative materials. They argue from that statement that the record is necessarily incomplete. *See* Dkt. No. 34 at 3 (citing Dkt. No. 26); *id.* at 7. The argument proves too much and admits of no limiting principle. If this statement alone were sufficient to rebut the presumption of regularity, there would be no presumption. In perhaps every case, the agency will generate some documents that are predecisional and deliberative that are not properly included in the whole record. It is not sufficient for Plaintiffs merely to mouth that predecisional and deliberative documents have been omitted.

Second, Plaintiffs point to the list of titles of the documents received through their FOIA request as evidence that documents that should have been included in the administrative record have not been included. *Id.* at 6. But that argument also proves too much. Plaintiffs framed the request to pick up not only documents relied upon by the agency but also all records "mentioning or including" FWS's 12-month finding on the eastern hellbender. Dkt. No. 35-2. Thus, that the agency produced in response to the FOIA request documents that are not part of the administrative record certified by the agency proves nothing. Not every document that mentions or includes the finding need be included in the whole record. Nor are the titles of the documents contained in the list sufficient in this case to rebut the presumption; they do not indicate to the Court whether the document itself should be part of the record or not. Based on Plaintiffs' submissions in connection with the instant motion, that motion is DENIED.

Plaintiffs may be able to rebut the presumption if they identify "reasonable, non-speculative grounds for [the] belief that the documents were considered by the agency and not included in the record." *Pac. Shores*, 448 F. Supp. 2d at 6. Such grounds may exist in the documents that are in Plaintiff's possession. If Plaintiffs identify documents that should have

been part of the whole record but were not included and identify reasons why those documents should be considered part of the record, they will have rebutted the presumption. Moreover, to rebut the presumption, Plaintiffs need not identify every document that should be included in the record. It is sufficient for Plaintiffs to identify enough evidence to call into question the agency's judgment that it has drawn the line correctly. Moreover, the submission need not be made under seal; the documents are all public. If Plaintiffs rebut the presumption, the Court will review every document Plaintiffs seek to have added to the record to determine whether those documents should be included. Plaintiffs' formal motion to complete the record and to rebut the presumption should be made within one month of the date of this Opinion and Order. It is prudent and efficient for the Court to determine the contents of the whole record before the parties brief whether agency action should be set aside in light of that record. After the Court has decided the motion, it will then convene a conference to discuss the schedule for summary judgment motions.

      SO ORDERED.

Dated: July 18, 2022
      New York, New York

                                         LEWIS J. LIMAN
                                     United States District Judge